UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

U.S. BANK NATIONAL ASSOCIATION,
*as Trustee for Structured Adjustable Rate Mortgage Loan Trust, Mortgage Pass-Through Certificates, Series 2005-23*,

        Plaintiff,

v.

WALTER D. HASKINS,

        Defendant.

No. 18-CV-8478 (KMK)

OPINION & ORDER

Appearances:

John A. DiCaro, Esq.
Justin David Valle, Esq.
Shapiro & DiCaro, LLP
Rochester, NY
*Counsel for Plaintiff*

Paul Edward Svensson, Esq.
Hodges Walsh & Burke, LLP
White Plains, NY
*Counsel for Defendant*

KENNETH M. KARAS, United States District Judge:

  U.S. Bank National Association ("Plaintiff") brings this Action for quiet title against Walter D. Haskins ("Defendant"), seeking relief under New York Real Property Actions and Proceedings Law ("RPAPL") § 1352. (*See* Compl. (Dkt. No. 2-1); *see also* Pet. for Removal 1 (Dkt. No. 2).) Currently before the Court are the Parties' Motions for Summary Judgment. (*See* Not. of Pl.'s Mot.; Not. of Def.'s Cross Mot. (Dkt. Nos. 29, 33).) For the reasons discussed below, the Court grants Plaintiff's Motion, denies Defendant's Cross Motion, and grants Plaintiff the relief it seeks.

I. Background

A. Factual Background

The following facts are taken from the Parties' Rule 56.1 Statements and Counterstatements.¹ (*See* Pl.'s 56.1 Statement in Supp. of Mot. ("Pl.'s 56.1"); Def.'s 56.1

---

¹Local Civil Rule 56.1(a) requires the moving party to submit a "short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried." The nonmoving party, in turn, must submit "a correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party, and if necessary, additional paragraphs containing a separate, short[,] and concise statement of additional material facts as to which it is contended that there exists a genuine issue to be tried." Local Civ. R. 56.1(b). "If the opposing party . . . fails to controvert a fact set forth in the movant's Rule 56.1 statement, that fact will be deemed admitted pursuant to the local rule." *Baity v. Kralik*, 51 F. Supp. 3d 414, 418 (S.D.N.Y. 2014) (internal quotation marks omitted); *see also T.Y. v. N.Y.C. Dep't of Educ.*, 584 F.3d 412, 418 (2d Cir. 2009) (same).

Where the Parties identify disputed facts but with semantic objections only or by asserting irrelevant facts, these purported disputes, which do not actually challenge the factual substance described in the relevant paragraphs, the Court will not consider them as creating disputes of fact. *See Baity*, 51 F. Supp. 3d at 418 ("Many of [the] [p]laintiff's purported denials—and a number of his admissions—improperly interject arguments and/or immaterial facts in response to facts asserted by [the] [d]efendants, often speaking past [the] [d]efendants' asserted facts without specifically controverting those same facts."); *id.* ("[A] number of [the] [p]laintiffs' purported denials quibble with [the] [d]efendants' phraseology, but do not address the factual substance asserted by [the] [d]efendants."); *Pape v. Bd. of Educ. of Wappingers Cent. Sch. Dist.*, No. 07-CV-8828, 2013 WL 3929630, at *1 n.2 (S.D.N.Y. July 30, 2013) (explaining that the plaintiff's 56.1 statement violated the rule because it "improperly interjects arguments and/or immaterial facts in response to facts asserted by [the] [d]efendant, without specifically controverting those facts," and "[i]n other instances, . . . neither admits nor denies a particular fact, but instead responds with equivocal statements"); *Goldstick v. The Hartford, Inc.*, No. 00-CV-8577, 2002 WL 1906029, at *1 (S.D.N.Y. Aug. 19, 2002) (noting that the plaintiff's 56.1 statement "does not comply with the rule" because "it adds argumentative and often lengthy narrative in almost every case[,] the object of which is to 'spin' the impact of the admissions [the] plaintiff has been compelled to make").

Any party's failure to provide record support for its challenge to another party's factual statement could allow the Court to deem the challenged facts undisputed. *See Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001) (explaining that the court is not required to search the record for genuine issues of material fact that the party opposing summary judgment failed to bring to the court's attention); *Baity*, 51 F. Supp. 3d at 418 (collecting cases holding that "responses that do not point to any evidence in the record that may create a genuine issue of material fact do not function as denials, and will be deemed admissions of the stated fact." (alteration and internal quotation marks omitted)).

Therefore, where the Court cites to only one of the Parties' Rule 56.1 Statements or

Statement in Supp. of Cross. Mot. ("Def.'s 56.1"); Def.'s Counterstatement to Pl.'s 56.1 ("Def.'s Counter 56.1"); Pl.'s Counterstatement to Def.'s 56.1 ("Pl.'s Counter 56.1") (Dkt. Nos. 30, 35, 36, 41).)

Plaintiff is the owner in fee simple of the real property 549 Purchase Street, Rye, New York 10580 (the "Property"). (Pl.'s 56.1 ¶ 6.) The ownership arose from a series of transactions, summarized here. On October 11, 2005, Metrocities Mortgage LLC D.B.A. No Red Tape Mortgage ("Metrocities") gave a mortgage to Christine Principato ("Principato"), the previous owner of the Property, and secured a note of the same date representing a mortgage loan of $617,500. (*Id.* ¶ 8.) On February 14, 2011, Aurora Loan Services LLC ("Aurora"), which had acquired the Principato note and mortgage from Metrocities, commenced an action in Westchester County Supreme Court against Principato for the foreclosure and sale of the Property. (Def.'s 56.1 ¶ 1.) The note and mortgage were transferred from Aurora to Nationstar Mortgage LLC ("Nationstar") through an assignment executed on October 5, 2012 and recorded on December 11, 2012. (*Id.* ¶ 2.)

The foreclosure action's notice of pendency, filed on February 14, 2011, was valid for three years. (Pl.'s 56.1 ¶ 13.) That notice was not re-filed until April 21, 2014, creating a "gap" in the record of the notice of pendency for the foreclosure action. (*Id.*) On March 25, 2014—during this gap—Defendant filed an abstract of judgment in the amount of $111,872.57 granted to him by a court in this District against Principato with the County Clerk's office. (*Id.* ¶ 12; *see also* Decl. of Paul E. Svensson, Esq. ("Svensson") in Supp. of Def.'s Cross Mot. ("Svensson Decl.") Ex. 1 ("Def.'s Judgment") (Dkt. No. 34-1).) On November 2, 2016, the Westchester County Supreme Court finally granted Nationstar a Judgment of Foreclosure and Sale. (Def.'s

---

Counterstatements, that fact is materially undisputed unless noted otherwise.

56.1 ¶ 8.) On April 10, 2017, the Judgment of Foreclosure and Sale was transferred to Plaintiff through an assignment of mortgage, which was executed on April 10, 2017 and recorded on August 4, 2017. (*Id.* ¶ 12.) Plaintiff then purchased the Property through a referee's deed dated April 25, 2018 and recorded on May 13, 2018. (Pl.'s 56.1 ¶ 7.) Although the total foreclosure amount was $1,195,310.83, the Property sold for $1,092,218.93, $103,091.93 less than the full amount. (Def.'s 56.1 ¶ 17.)

Defendant was not joined as a party to the initial foreclosure action. (Pl.'s 56.1 ¶ 15.) Therefore, Defendant's lien survived the execution of the judgment of foreclosure. (*Id.* ¶ 16.) At the time of the Judgment of Foreclosure and Sale, the amount owed to the plaintiff in that foreclosure action on the mortgage was $823,147.48, plus interest and other sums delineated in the Judgment of Foreclosure and Sale. (*Id.* ¶ 17; *see also* Svensson Decl. Ex. 3 ("Judgment of Foreclosure and Sale") (Dkt. No. 34-3).) Defendant avers that he did not have "actual or constructive notice of the Judgment of Foreclosure and Sale" until the instant Action was commenced in 2018. (Def.'s 56.1 ¶ 20.)

Plaintiff asks the Court to provide Defendant with a period of time within which to redeem his interest in the Property, including the value of any improvements made to the Property by Plaintiff, or face foreclosure of any interest in the Property, thereby clearing the remaining cloud on Plaintiff's title to the Property. (Compl. 6.) Defendant counterclaims, seeking declaratory judgments that his lien is still valid against the Property; that his lien "takes preference" to Plaintiff's mortgage lien; and that Plaintiff failed to satisfy Defendant's lien on the Property filed with the County Clerk, as well as damages in excess of $75,000 based on Plaintiff's failure to satisfy Defendant's lien. (Counterclaims ¶¶ 1–4 (Dkt. No. 10 at ECF 4).)

B.  Procedural Background

Plaintiff first filed its Complaint, signed July 17, 2018, on July 18, 2018.  (*See* Compl. 7.)  On September 18, 2018, Defendant removed the Action to this Court on diversity grounds.  (*See generally* Pet. for Removal.)  Defendant answered the Complaint and filed Counterclaims on September 19, 2018.  (*See* Def.'s Ans. & Counterclaims (Dkt. No. 10).)  Plaintiff answered the Counterclaims on October 23, 2018.  (*See* Pl.'s Ans. (Dkt. No. 17).)

Plaintiff filed its Notice of Motion and accompanying moving papers on May 22, 2019.  (*See* Not. of Pl.'s Mot.; Pl.'s 56.1; Pl.'s Mem. in Supp. of Mot. ("Pl.'s Mem.") (Dkt. No. 31); Aff. in Supp. of Mot. ("Pl.'s Aff.") (Dkt. No. 32).)  Defendant filed his Cross Motion, including his Opposition to Plaintiff's Motion, and accompanying papers on June 20, 2019.  (*See* Not. of Def.'s Cross Mot.; Svensson Decl.; Def.'s 56.1; Def.'s Counter 56.1; Def.'s Mem. in Opp'n to Mot. and in Supp. of Cross Mot. ("Def.'s Mem.") (Dkt. No. 37).)  Plaintiff filed its Reply and accompanying papers on July 8, 2019.  (*See* Decl. of Justine Valle, Esq. ("Valle") in Supp. of Mot. and in Opp'n to Cross Mot. ("Valle Decl."); Pl.'s Reply Mem. in Supp. of Mot. and in Opp'n to Cross Mot. ("Pl.'s Reply Mem.") (Dkt. Nos. 39, 40); Pl.'s Counter 56.1.)  Defendant filed his Reply and accompanying papers on July 22, 2019.  (*See* Svensson Reply Decl. in Opp'n to Mot. and in Supp. of Cross Mot. ("Svensson Reply Decl."); Def.'s Reply Mem. in Opp'n to Mot. and in Supp. of Cross Mot. ("Def.'s Reply Mem.") (Dkt. Nos. 42, 43).)

II.  Discussion

A.  Standard of Review

Summary judgment is appropriate where the movant shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120, 123–24 (2d Cir.

2014) (same). "In determining whether summary judgment is appropriate," a court must "construe the facts in the light most favorable to the non-moving party and . . . resolve all ambiguities and draw all reasonable inferences against the movant." *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (quotation marks omitted); *see also Borough of Upper Saddle River v. Rockland Cty. Sewer Dist. No. 1*, 16 F. Supp. 3d 294, 314 (S.D.N.Y. 2014) (same). "It is the movant's burden to show that no genuine factual dispute exists." *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004); *see also Berry v. Marchinkowski*, 137 F. Supp. 3d 495, 521 (S.D.N.Y. 2015) (same).

"However, when the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim," in which case "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *CILP Assocs., L.P. v. Pricewaterhouse Coopers LLP*, 735 F.3d 114, 123 (2d Cir. 2013) (alteration and quotation marks omitted). Further, "[t]o survive a [summary judgment] motion . . ., [a nonmovant] need[s] to create more than a 'metaphysical' possibility that his allegations were correct; he need[s] to 'come forward with specific facts showing that there is a genuine issue for trial,'" *Wrobel v. County of Erie*, 692 F.3d 22, 30 (2d Cir. 2012) (emphasis omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)), "and cannot rely on the mere allegations or denials contained in the pleadings," *Guardian Life Ins. Co. v. Gilmore*, 45 F. Supp. 3d 310, 322 (S.D.N.Y. 2014) (quotation marks omitted); *see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009) ("When a motion for summary judgment is properly supported by documents or other evidentiary materials, the party opposing summary judgment may not merely rest on the allegations or denials of his pleading

6

. . . ."). And, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

"On a motion for summary judgment, a fact is material if it might affect the outcome of the suit under the governing law." *Royal Crown Day Care LLC v. Dep't of Health & Mental Hygiene*, 746 F.3d 538, 544 (2d Cir. 2014) (quotation marks omitted). At this stage, "[t]he role of the court is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *Brod*, 653 F.3d at 164 (quotation marks omitted). Thus, a court's goal should be "to isolate and dispose of factually unsupported claims." *Geneva Pharm. Tech. Corp. v. Barr Labs. Inc.*, 386 F.3d 485, 495 (2d Cir. 2004) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986) (quotation marks omitted). However, a district court should consider only evidence that would be admissible at trial. *See Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*, 164 F.3d 736, 746 (2d Cir. 1998). "[W]here a party relies on affidavits . . . to establish facts, the statements 'must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant . . . is competent to testify on the matters stated.'" *DiStiso v. Cook*, 691 F.3d 226, 230 (2d Cir. 2012) (quoting Fed. R. Civ. P. 56(c)(4)).

As a general rule, "district courts may not weigh evidence or assess the credibility of witnesses at the summary judgment stage." *Jeffreys v. City of New York*, 426 F.3d 549, 551 (2d Cir. 2005); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986) (noting that at the summary judgment stage, the court is not to "weigh the evidence and determine the truth of the matter"); *Vital v. Interfaith Med. Ctr.*, 168 F.3d 615, 622 (2d Cir. 1999) ("Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for

the court on summary judgment.") (quotation marks omitted). Where the evidence presents "a question of 'he said, she said'" the court "cannot . . . take a side at the summary judgment stage." *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 726 (2d Cir. 2010); *see also Kassel v. City of Middletown*, 272 F. Supp. 3d 516, 535 (S.D.N.Y. 2017) (noting that "it is not the role of the [c]ourt at summary judgment to resolve [a] factual clash"); *Bale v. Nastasi*, 982 F. Supp. 2d 250, 258–59 (S.D.N.Y. 2013) (stating that "[w]here each side . . . tells a story that is at least plausible and would allow a jury to find in its favor, it is for the jury to make the credibility determinations and apportion liability, and not for the court."). And, even if the non-movant's evidence is "thin, [a non-movant's] own sworn statement is adequate to counter summary judgment." *Scott v. Coughlin*, 344 F.3d 282, 290–91 (2d Cir. 2003) (holding that "[t]he credibility of [Plaintiff's] statements and the weight of contradictory evidence may only be evaluated by a finder of fact.").

### B.  Applicable Law

Generally, the plaintiff in a mortgage foreclosure action is required to join as a party to that action any person whose lien or incumbrance is claimed to be subject and subordinate to the plaintiff's lien. *See* N.Y. Real Prop. Acts. § 1311(3). Junior lienholders are typically required to be joined to foreclosure actions because "the underlying objective of foreclosure actions [is] to extinguish the rights of redemption of all those who have a subordinate interest in the property and to vest complete title in the purchase at the judicial sale." *6820 Ridge Realty LLC v. Goldman*, 701 N.Y.S.2d 69 (App. Div. 1999) (citation and quotation marks omitted). When a necessary party is omitted from the foreclosure action, "that party's rights [are] unaffected by the judgment and sale, and the foreclosure may be considered void as to the omitted party." *Id.* (citations omitted). "However, in such cases, the purchaser of the foreclosed property has two

8

potential remedies—the commencement of a strict foreclosure action pursuant to RPAPL [§] 1352, or a reforeclosure action pursuant to [§] 1503." *Id*. When the purchaser chooses to pursue a strict foreclosure action, RPAPL § 1352 "authorizes the court to issue a judgment that fixes a time period within which any person having a right of redemption or right to foreclose a subordinate lien must act to redeem or begin a foreclosure action. If the person having a right of redemption or subordinate lien fails to redeem the property or commence a foreclosure action within the time period fixed by the court, such person shall be excluded from claiming any title or interest in such property and all title or interest of such person . . . shall thereby be extinguished and terminated." *Id*. (citing N.Y. Real. Prop. Acts. § 1352) (quotation marks omitted). Therefore, "a judgment of strict foreclosure cures a defect in the judgment or sale under the first foreclosure." *Id*. (citation and quotation marks omitted). The alternative remedy—an action for reforeclosure under RPAPL § 1503, when read together with § 1523(1)—provides that "a judgment of reforeclosure may be issued only where it appears that there was a defect in the original foreclosure proceeding . . . which was not occasioned by the fraud or willful neglect of the plaintiff." *Id*. at 27 (citation, alteration, and quotation marks omitted). "*In contrast*, [RPAPL §] 1352 *places no such limitation* on the right to obtain a judgment of strict foreclosure." *Id*. (alterations omitted) (emphasis added).[2]

The section of the RPAPL that provides for strict procedure reads in full:

---

[2] There are also other differences between an action under RPAPL § 1352 and § 1503, including that a reforeclosure action may be maintained "even after the right to foreclose the superior mortgage or a right of redemption would be time-barred," and that a reforeclosure judgment may "direct a new sale of the premises," whereas, under a strict foreclosure judgment, the court simply directs a fixed time within which the defendant has an opportunity to redeem. *Id*. at 26–27. Perhaps because the reforeclosure action may be brought even after other remedies would be time-barred, the reforeclosure action is qualified by language that excludes from its scope foreclosure purchases done through fraud or willful neglect. *See id*. at 27.

> Where real property has been sold pursuant to a judgment in an action to foreclose a mortgage, and an action is thereafter brought to foreclose or extinguish a right of redemption in such real property, the judgment, instead of directing a sale of the property, shall fix the right of any person having a right of redemption therein or the right to foreclose a subordinate mortgage or other lien and shall provide that a failure to redeem or commence an action for the foreclosure of such mortgage or other lien within such time shall preclude such person having a right of redemption or the holder of such mortgage or other lien from redeeming such property or foreclosing such mortgage or other lien, and thereafter such person having a right of redemption or the holder of such mortgage or other lien shall be excluded from claiming any title or interest in such property and all title or interest of such person having a right of redemption in, or the right to foreclose a subordinate mortgage or other lien against such property shall thereby be extinguished and terminated.

N.Y. Real Prop. Acts. § 1352.

C.  Application

At the outset, it is clear that Defendant's lien is subordinate to the mortgage under which Plaintiff purchased the property. The mortgage—which was ultimately transferred to Plaintiff through a series of assignments, (*see* Def.'s 56.1 ¶¶ 1–2, 12)—was placed on the Property on October 11, 2005, (Pl.'s 56.1 ¶ 8), whereas Defendant's judgment lien on the Property was not recorded until March 25, 2014 in the County Clerk's office, (*id*. ¶ 12). Under New York law, a properly recorded mortgage is "superior to subsequently recorded mortgages [and liens]." *See Gletzer v. Harris*, 909 N.E.2d 1224, 1226 (N.Y. 2009) (citation omitted); *see also CIT Bank, N.A. v. Vasquez*, No. 17-CV-4654, 2019 WL 4418883, at *5 (E.D.N.Y. Aug. 19, 2019) ("In New York, a mortgage is a 'specific lien on the land' and is 'superior to the claims of subsequent judgment creditors.'" (quoting *Sav. & Loan Ass'n of Kingston v. Berberich*, 264 N.Y.S.2d 989 (App. Div. 1965))); *Dep't of Hous. Preservation and Dev. of City of N.Y. v. Ferranti*, 622 N.Y.S.2d 717 (App. Div. 1995) (noting that a judgment only becomes a lien "upon the subject real property at the time it was docketed" (collecting cases)).

Further, it is undisputed that Plaintiff properly purchased the Property at a foreclosure sale of a mortgage, (Pl.'s 56.1 ¶¶ 7–8), and that Defendant, who had a subordinate lien on the Property, was not joined in that sale, meaning that Defendant's lien survived the foreclosure (*id.* ¶¶ 13–16). Plaintiff now seeks relief under RPAPL § 1352, a remedy known as strict foreclosure. Had Plaintiff pursued a remedy under reforeclosure, RPAPL § 1503, then the question of whether Plaintiff's failure to join Defendant to the foreclosure action despite Defendant's March 25, 2014 filing of an abstract of judgment with the County Clerk constituted fraud or willful neglect might have precipitated a genuine, material factual dispute to be resolved by a trier of fact. However, Plaintiff did not choose that avenue. Instead, the instant Action is based on RPAPL § 1352, which contains no limitation for fraud or willful neglect. The Second Department recognized and enforced this distinction in *6820 Ridge Realty LLC*, which explained that perhaps "due to the fact that a reforeclosure action may be maintained even after the right to foreclose the superior mortgage or a right of redemption would be time-barred, [a reforeclosure action contains the further requirement of no] fraud or willful neglect" on behalf of the party who wishes to foreclose. *Id* at 72. In that case, the court decided that "the purchaser of property at a foreclosure sale has a statutory right to commence a strict foreclosure action against an omitted tenant," who has "an equitable right to redeem his landlord's mortgage" that survives a foreclosure action where the tenant is omitted, and then granted summary judgment to the property purchaser for relief under RPAPL § 1352. *Id.* In doing so, the court relied upon case law indicating that even "prior to the enactment of the RPAPL provisions," "the purchaser's right to commence an action to extinguish [a] possessory interest . . . omitted from the original foreclosure proceeding was recognized at common law." *Id.* The court noted that "courts have held that a purchaser may at any time reforeclose his mortgage as against the holder of a lesser

interest, notwithstanding the prior defective foreclosure." *Id*. (quoting *Neustadter Found. v. Bernfeld*, 1 N.Y.S.2d 58 (Sup. Ct. 1937)). Therefore, based on the undisputed facts, this Action appears to qualify for strict foreclosure under RPAPL § 1352, notwithstanding any argument that Plaintiff should have known of Defendant's lien prior to completing the foreclosure sale.

Defendant's counterarguments are unavailing. Most of Defendant's arguments pertain to caveats and limitations present in § 1523, but § 1523 makes no reference to § 1352 or related proceedings, and Defendant offers no legal citations for the proposition that §§ 1352, 1503, and 1523 "must all be read together." (Pl.'s Mem. 14.) On the contrary, by its own terms, § 1523 applies only to actions brought under § 1503. *See* N.Y. Real Prop. Acts. § 1523 ("In an action under *section 1503* . . ." (emphasis added)). Defendant points in part to cases from the nineteenth century, *Moulton v. Cornish*, 138 N.Y. 133 (1893) and *Denton v. Ontario Cty. Nat'l Bank*, 150 N.Y. 126 (1896), (*see* Def.'s Mem. 13–14), which interpreted a New York Code of Civil Procedure that predates all the operative statutes at issue in this Action. Sections 1352, 1503, and 1523 of the RPAPL were all enacted in 1962, *see* N.Y. Real Prop. Acts §§ 1352, 1503, 1523, and were subsequently interpreted in multiple opinions written by New York state courts in the 20th century and beyond—the content of which is discussed in more detail below—that neither referred to Plaintiff's cases nor used their analyses to color their interpretation of the newer statutes. Moreover, *Moulton* is not particularly helpful to Defendant as the court there noted that "the plaintiff *may* at any time foreclose her mortgage, as against the defendant, notwithstanding the former defective foreclosure." *Moulton*, 138 N.Y. at 145 (citation omitted) (emphasis added). The court reversed and ordered a new trial because the court determined that "all persons who are necessary parties defendant" could be brought into the action. *Id*.

Although Defendant argues that the reforeclosure and strict foreclosure statutes should be read together and that the requirements for one remedy should be imported onto another, the Court finds no support for that in the statutory language or the (admittedly limited) case law interpreting it. In fact, the case law indicates that New York law recognizes distinctions between the remedies, including the key point that strict foreclosure is an absolute right, whereas reforeclosure is not. For example, in *NYCTL 1996-1 Tr. v. Guthartz*, 293 N.Y.S.2d 455 (App. Div. 2002), the court noted that "[c]ontrary to the [defendant's] contention, the plaintiffs were entitled to commence a strict foreclosure action against him even though they failed to join him as a defendant in the original foreclosure action." *Id.* In *Davis v. Cole*, 747 N.Y.S.2d 722 (Sup. Ct. 2002), the court stated, "[i]n contrast to reforeclosure, strict foreclosure is 'an absolute right' and 'whether plaintiff had knowledge of defendant's lien at the time it took title is irrelevant.'" *Id.* (quoting *2035 Realty Co. v. Howard Fuel Corp.*, 431 N.Y.S.2d 57 (App. Div. 1980) (alteration omitted)); *see also NYCTL 1996-1 Commercial Reo, LLP v. El Pequeno Rest. Food Corp.*, 765 N.Y.S.2d 465 (Sup. Ct. 2003) ("Here, the plaintiff purchaser opted to commence a strict foreclosure action. Therefore, defendants' arguments regarding 'willful neglect' are inapplicable." (citation omitted)).

Defendant's cited cases do not hold otherwise. For example, in *HSBC Bank USA, Nat's Ass'n v. Guardian Preservation LLC*, 75 N.Y.S.3d 636 (App. Div. 2018), the Third Department affirmed a lower court decision which did not reach the question of strict foreclosure because it found that the plaintiff was entitled to foreclosure under RPAPL § 1503 as an alternative to § 1352. *See id.* However, there, unlike here, the plaintiff was specifically seeking relief under the reforeclosure statute and moved for summary judgment on those grounds *in addition* to relief under strict foreclosure; nothing in that holding implied that this Court must sua sponte

"conduct[] a preliminary analysis under [RPAPL] § 1523 [and § 1503] before proceeding to [P]laintiff's" actual claim, (Def.'s Reply Mem. 6), which, here, *only* asserts relief under RPAPL § 1352, the strict foreclosure statute, (*see* Pl.'s Mem. 8). Another one of Defendant's cases, *Andy Assocs. Inc. v. Bankers Tr. Co.*, 399 N.E.2d 1160 (N.Y. 1979), addressed whether a subsequent purchaser of real property could be charged with "having had constructive notice of [the prior purchaser's] prior claim" to the property in question. *Id.* That case did not involve RPAPL § 1352 or post-foreclosure remedies, as the holding applied to a dispute that arose *during* the foreclosure action regarding the priority of different lienholders. *See id.*[3]

It is true that New York courts have stated that "strict foreclosure and reforeclosure are harsh remedies," and state courts have opted to "narrowly interpret RPAPL [§§] 1352 and 1503," but those warnings were used in the context of questions regarding the scope of the application of the statute, such as whether an easement holder or a tenant—as opposed to a lienholder—fell within the "class of persons against whom a strict foreclosure or reforeclosure action may be brought." *Bass v. D. Ragno Realty Corp.*, 976 N.Y.S.2d 118, 120 (App. Div. 2013) (collecting cases). However, the present Action implicates a mortgage holder and a junior lienholder, falling squarely within the class of cases specifically articulated as eligible for strict foreclosure under RPAPL § 1352. Since that right is absolute and unqualified by any restriction as to fraud

---

[3] Plaintiff also cites *O'Donnell v. Barth*, 482 N.Y.S.2d 293 (App. Div. 1984), which summarily affirmed a lower court decision denying summary judgment where "an issue of fact existed as to whether or not plaintiff was aware of the interests of the defendants-respondents prior to the foreclosure sale." *Id.* However, that short affirmance does not summarize the facts or circumstances of the case, provide the legal reasoning underlying the decision, or even cite which statute constituted the basis of the cause of action, and the Court will not follow the same disposition in the face of other, longer opinions that specifically articulate the differences between strict foreclosure and reforeclosure and apply that law to analogous facts.

or willful neglect, as discussed above, there is no material dispute; even *if* it were patently clear Plaintiffs had engaged in fraud or willful neglect, that would not bar relief under the statute.

Defendant correctly points out that the terms of sale under which the Property was sold to Plaintiff put Plaintiff on "actual notice that prior liens would continue to attach to the property after the sale if left unaddressed." (Def.'s Mem. 10.) However, this notice provision within the terms of sale does not affect the outcome of this Action. The terms of sale simply warned Plaintiff that the Property was being sold to them in an "as is" condition and that it may be subject to "prior liens, if any," which did not in and of itself put Plaintiff on notice of the existence of specifically Defendant's lien. (Svensson Decl. Ex. 4 ("Terms of Sale") ¶ 6(d) (Dkt. No. 34-4).) The same can be said of the limitation in the Judgment of Foreclosure and Sale, which stated that the Property was sold "subject to . . . [a]ny prior outstanding mortgages or liens that may exist on the subject premises." (Judgment of Foreclosure and Sale 3–4.) Moreover, Plaintiff admits—as it must—that Defendant's lien continues to remain valid and is a cloud on Plaintiff's title to the Property; indeed that is exactly why Plaintiff brought this Action. (*See* Pl.'s Mem. 5.) The terms of sale and the Judgment of Foreclosure and Sale simply warned Plaintiff of the hypothetical possibility of this exact complication, which Plaintiff is entitled to remedy through RPAPL § 1352. Accordingly, the Court grants Plaintiff the relief it seeks.[4]

---

[4] Defendant's argument that it is entitled to $75,000 in damages from being excluded from the foreclosure action is meritless. (*See* Counterclaims ¶ 4.) Defendant makes no argument as to why it has suffered a loss of $75,000 or in what capacity it would be entitled to recover it. Defendant's one paragraph regarding this claim only argues that Plaintiff paid $103,091.93 less than the total foreclosure amount for the purchase of the Property. (Def.'s Mem. 11.) This does not create a genuine material dispute as to whether Defendant suffered damages from Plaintiff's purchase of the entire Property, especially since Defendant makes no claim that he would or could have outbid Plaintiff at the foreclosure sale. (*See generally* Svensson Decl. Ex. 9 ("Haskins Aff.") (Dkt. No. 34-9).)

### III. Conclusion

For the foregoing reasons, the Court denies Defendant's Cross Motion, grants Plaintiff's Motion, and provides Defendant with a 60-day period from the date of this Opinion & Order within which Defendant must notify Plaintiff of his intent to exercise his right of redemption and pay the mortgage debt, along with the value of improvements made to the Property, to maintain his interest in the Property.[5] The Clerk of Court is respectfully directed to terminate the pending Motions and close this case. (*See* Dkt. Nos. 29, 33.)

SO ORDERED.

Dated: December 18, 2019
White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

---

[5] The Court chooses a 60-day redemption period based on a similar order in a case also involving Plaintiff seeking strict foreclosure against a subordinate lienholder. (*See* Pl.'s Mem. Ex. 2 ("Bank of Smithtown Order") 1 (Dkt. No. 31 at ECF 20–26).)

16